ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| **OMAR OSVALDO RUIZ FIGUEROA**<br><br>Recurrente<br><br>v.<br><br>**DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN**<br><br>Recurrido | TA2026RA00106 | **REVISIÓN** procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm:<br><br>Sobre: Reclasificación de Custodia |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

### SENTENCIA

En San Juan, Puerto Rico, a 31 de marzo de 2026.

Comparece ante este Tribunal de Apelaciones, por derecho propio, Omar Osvaldo Ruiz Figueroa (Ruiz Figueroa o recurrente), quien se encuentra bajo la custodia del Departamento de Corrección y Rehabilitación.[1] Nos solicita que revisemos la *Resolución de Hecho y Derecho* que emitió el Comité de Clasificación y Tratamiento[2] (Comité) el 28 de enero de 2026, mediante la cual se ratificó su nivel de custodia máxima.

Por los fundamentos que expresamos a continuación, se confirma la determinación impugnada.

### I.

Según surge del expediente, Ruiz Figueroa cumple una sentencia total de 25 años de cárcel por cometer el delito de asesinato atenuado e infringir el Artículo 6.14 de la Ley de Armas. El 30 de julio de 2033 cumple el mínimo de su sentencia y tiene un máximo tentativo para el 16 de marzo de 2046. Fue clasificado inicialmente en custodia máxima el 22 de enero de 2025 y en la

---

[1] Se declara *Ha Lugar* la *Solicitud para Declaración de Indigencia* instada por recurrente.
[2] División adscrita al Departamento de Corrección y Rehabilitación de Puerto Rico.

actualidad permanece en dicho nivel. Durante su estadía en la Institución Correccional Ponce Máxima no ha incurrido en informes negativos ni querellas disciplinarias.

El 28 de enero de 2026, Ruiz Figueroa fue evaluado por el Comité. Como parte del *Acuerdo del Comité de Clasificación y Tratamiento*, se ratificó la custodia máxima. Asimismo, se pactó que continuara en sus labores de ordenanza en el D2. En cuanto a los estudios, continuó el referido al área educativa. Además, fue referido al área de Physician Correctional (Regulación del Coraje y Control de Impulsos), así como a la Sección de Evaluación y Asesoramiento. Por último, se le concedieron siete (7) días de bonificación adicional en el periodo del 17 de julio de 2025 al 17 de enero de 2026.

De la *Escala de Reclasificación de Custodia (Casos Sentenciados)* surge que Ruiz Figueroa obtuvo una puntuación total de dos (2). Como norma general, según la leyenda del documento, correspondería asignarlo a una custodia mínima. Sin embargo, tras aplicar la modificación discrecional sobre la gravedad del delito, para justificar un nivel de custodia más alto del obtenido mediante el cálculo y considerar los ajustes institucionales, el Comité recomendó ratificar su nivel de custodia máxima y asignarlo a la población general.

Así las cosas, el Comité emitió la resolución que hoy revisamos, en la cual incluyó las siguientes conclusiones de derecho:

> …[s]e evidencia de sus expedientes las circunstancias de los hechos, los cuales son de naturaleza violenta en contra de un ser humano. Se desprende que a raíz de unas diferencias por un terreno que había comprado hace 22 años, el perjudicado se acercó a la colindancia del terreno para limpiar los alrededores con la intención de ganar acceso a un camión abandonado que se encontraba allí. Posteriormente, el confinado se acercó a la víctima, discutieron y luego le pidió que se fuera, por lo que el perjudicado se montó en su vehículo, bajó el cristal y le dice "vengo ahora que voy a buscar más gente y cuando vire voy a subir para la casa y los voy a matar a todos" y en ese mismo instante el confinado

sacó el arma de fuego y le disparó, causándole la muerte. Alegó que el perjudicado no le apuntó, pero tenía un arma de fuego. Expresó arrepentimiento, ya que entiende que los hechos se pudieron haber evitado. Con dichos hechos demuestra crueldad y menosprecio a la vida humana.

Por dichos hechos fue sentenciado por el Honorable Tribunal de Caguas a cumplir una sentencia de 25 años en prisión por los delitos de Art. 95 Asesinato Atenuado y Art. 6.14 L.A. Disparar o apuntar armas. Cuenta con un mínimo de sentencia para el 30 de julio de 2033 y un máximo tentativo para el 16 de marzo de 2046, por lo que le resta un remanente de 20 años para finalizar la sentencia impuesta. El CCT entra en conocimiento que en este periodo fue evaluado por personal del área de Physician Correctional (Trabajadora Social), informando que el MPC al momento no requiere servicios en el área de los Trastornos Adictivos. También, recientemente se le brindó la oportunidad de rendir labores de ordenanza en el D2 lado izquierdo y al momento no se desprende aspectos negativos en el área de trabajo. Advenimos en conocimiento que se encuentra referido para las terapias de Regulación del Coraje y Control de Impulsos y para el tratamiento de Aprendiendo a Vivir sin Violencia, los cuales son meritorios en su caso por los delitos que extingue. Al presente no se ha beneficiado de ninguna terapia y/o tratamiento. El CCT espera que el MPC logre beneficiarse de todas las terapias que se ofrecen en la institución y puedan ser impactas todas sus necesidades con el fin de lograr su rehabilitación.

Así las cosas, y considerando que el proceso de rehabilitación es uno gradual y complejo; afines de garantizar los objetivos de su rehabilitación y la seguridad pública es necesario que continúe observando ajustes institucionales bajo máximas restricciones físicas. Exhortamos al MPC a demostrar sentido de responsabilidad e introspección hacia el confinamiento, que su conducta refleje un verdadero cambio, mientras se produce la rehabilitación moral y social del confinado.

El Comité destacó que la reevaluación de la custodia no necesariamente tenía como resultado un cambio de custodia o vivienda asignada, toda vez que su función es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir.

En desacuerdo, Ruiz Figueroa acude ante nos y señala que el Departamento de Corrección y Rehabilitación cometió los siguientes errores:

Erró la [A]dministración de [C]orrección, en violación al mandato constitucional de la rehabilitación moral y social, al no reducir la custodia al recurrente amparándose en una modificación discrecional que no le aplica.

Erró la [A]dministración de [C]orrección, en violación a la Constitución, al alterar las modificaciones discrecionales. En sus enmiendas reglamentarias mutando (sic) a las sentencias de 25 años [o] más como la recurrente la reducción de custodia por avances en su rehabilitación, ajuste y contacto excelente.

Erró la [A]dministración de [C]orrección, en violación al mandato constitucional, al darle más peso a lo extenso de la sentencia en exclusión de todos los demás factores importantes que deben tomarse en consideración y más aún si están relacionados con la rehabilitación, ajuste y conducta del recurrente.

Erró la [A]dministración de [C]orrección, en violación al mandato constitucional de la rehabilitación, al someter al recurrente a tiempo indeterminado por alteraciones modificacionales (sic) sin consideración alguna para reducción de custodia.

Erró la [A]dministración de [C]orrección, en violación al mandato constitucional, al o darme una custodia menor en cual la tabla de clasificación de la reseña una puntuación de nivel de custodia mínima.

Erró la [A]dministración de [C]orrección, en violación a la Constitución, en los argumentos, fundamentos y circunstancias hechas por dicho Comité que no son correcta[s].

A tenor con la Regla 7 (B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 15, 215 DPR __ (2025), este Foro puede "prescindir de términos no jurisdiccionales, específicos," escritos, notificaciones o procedimientos adicionales, "con el propósito de lograr su más justo y eficiente despacho...". Ante ello, prescindimos de la comparecencia de la Oficina del Procurador General de Puerto Rico, en representación del Departamento de Corrección y Rehabilitación.

**II.**

**A.**

Sabido es que los tribunales apelativos están llamados a otorgar amplia deferencia a las decisiones de las agencias administrativas. *Katiria´s Café v. Mun. de San Juan*, 2025 TSPR 33,

215 DPR ___ (2025); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Otero v. Toyota,* 163 DPR 716, 727 (2005). Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus actuaciones un abuso de discreción. El criterio rector es la razonabilidad de la agencia recurrida.[3]

Así, al momento de evaluar una decisión administrativa, los tribunales tomarán en consideración, no solo la especialización y experiencia de la agencia sobre las controversias que tuviera ante sí, sino que también deben distinguir entre cuestiones relacionadas a la interpretación de las leyes —donde los tribunales son los especialistas— y aquellos asuntos propios para la discreción o pericia administrativa. *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 892 (2008). Véase, además, *Super Asphalt v. AFI y otros*, 206 DPR 803, 820 (2021); *Capó Cruz v. Jta. Planificación*, 204 DPR 581, 591-592 (2020).

Al aplicar el criterio de razonabilidad y deferencia, se ha dispuesto por la jurisprudencia que los foros apelativos no deben intervenir con las determinaciones de hechos que las agencias formulan, si las mismas están sostenidas por evidencia sustancial que obre en el expediente administrativo.[4] Bajo dicho escenario, los foros apelativos deben sostenerlas. Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675. Véase también, *Daco v. Toys "R" Us*, 191 DPR 760, 764 (2014). En cuanto a las conclusiones de derecho, la LPAU dispone que: "serán revisables en todos sus aspectos por el tribunal".

---

[3] Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016).
[4] Evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Otero v. Toyota*, supra, pág. 728.

Empero, debemos puntualizar que, aunque nuestro más Alto Foro ha expresado en reiteradas ocasiones que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente, dicha consideración por parte de los tribunales no equivale a una renuncia de nuestra función revisora. *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR ___ (2025).

En consonancia con lo anterior, el Tribunal Supremo de Puerto Rico, haciendo eco a las palabras del Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo,* 603 US 369 (2024), determinó en *Vázquez et al. v. DACo,* supra, que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales y enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU.

Asimismo, el Tribunal Supremo de Puerto Rico expresó en *Vázquez et al. v. DACo,* supra, que:

> **[A]l enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos.** No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial. (Énfasis nuestro).

Ahora bien, debido a que las resoluciones de los organismos administrativos gozan de una presunción de legalidad y corrección, quien las impugne tiene el peso de la prueba, por lo que deberá presentar evidencia suficiente para derrotarla. *Transp. Sonnell v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *García Reyes v. Cruz Auto Corp.*, supra, pág. 893. De lo anterior surge claramente que la carga probatoria le corresponde a la parte recurrente. Si incumple, la decisión administrativa deberá ser respetada por el foro apelativo.

**B.**

Por otra parte, el Comité de Clasificación y Tratamiento, establecido en cada una de las instituciones del Departamento de Corrección y Rehabilitación, es el responsable de evaluar las necesidades de seguridad y de programas de los confinados sentenciados para determinar cuál será su plan institucional. En virtud de tales funciones, el Departamento de Corrección y Rehabilitación aprobó el *Manual para la Clasificación de Confinados,* Reglamento Núm. 9151 del 22 de enero de 2020 (Reglamento Núm. 9151). El Comité tendrá como objetivos la rehabilitación y la seguridad pública. Parte IV(A) del Reglamento Núm. 9151.

El método de clasificación de los confinados es el eje central de una administración eficiente y un sistema correccional eficaz. Dicha clasificación consiste en la separación sistemática y evolutiva de éstos en subgrupos, en virtud de las necesidades de cada individuo, y las exigencias y necesidades de la sociedad, desde la fecha de ingreso del confinado hasta la fecha de su excarcelación. Introducción, Sección 2 (II) del Reglamento Núm. 9151.

La determinación del nivel de custodia asignado a un confinado requiere que se realice un balance de intereses adecuado. Por una parte, está el interés público de alcanzar la rehabilitación del confinado, así como mantener la seguridad institucional y general del resto de la población penal. De otro lado, está la aspiración del confinado de permanecer en un determinado nivel de custodia. Como parte del análisis correspondiente a un cambio en el nivel de custodia, se deben considerar ciertos elementos subjetivos y objetivos, para cuya atención se requiere la pericia del Departamento de Corrección y Rehabilitación. *López Borges v. Adm.*

*Corrección,* 185 DPR 603 (2012)[5]; *Cruz v. Administración,* supra, a la pág. 352.

Entre los criterios subjetivos que se deben analizar se encuentran: el carácter y actitud del confinado; la relación de este y los demás confinados y el resto del personal correccional; **el ajuste institucional mostrado por el confinado**, entre otros. A su vez, deben considerarse otros factores objetivos como: **la gravedad de los cargos;** el historial de delitos graves previos; historial de fugas; historial de acciones disciplinarias; historial de condenas previas por delitos graves como adulto; y edad del confinado. Del mismo modo, deben tenerse en cuenta **los delitos cometidos; las circunstancias de estos**; la extensión de la sentencia dictada; **tiempo cumplido en confinamiento**; **y aquellos factores que garanticen la seguridad institucional y pública**. Este último criterio debe prevalecer sobre el interés particular del confinado en permanecer en un nivel de custodia en específico. *Cruz v. Administración,* supra, a las págs. 352-354. (Énfasis nuestro).

Por su parte, el *Formulario de Reclasificación de Custodia (Escala de Reclasificación de Custodia)* (Apéndice K), se utiliza para actualizar y revisar la evaluación inicial de custodia del confinado. Sección 7 (II) del Reglamento Núm. 9151. La reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia o la vivienda asignada. Su función primordial es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir. La reevaluación de custodia recalca aún más en la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión. El proceso de reevaluación de custodia es realizado por el Comité para atender las necesidades del confinado, observar su progreso y

---

[5] Opinión de Conformidad emitida por la Jueza Asociada Rodríguez Rodríguez.

recomendar posibles cursos de acción en cuanto a su rehabilitación. *Cruz v. Administración*, supra, pág. 354. Es importante que los confinados que cumplan sentencias prolongadas tengan la oportunidad de obtener una reducción en niveles de custodia mediante el cumplimiento con los requisitos de la institución. Sección 7 (II) del Reglamento Núm. 9151.

Para documentar el proceso de reclasificación del nivel de custodia de un confinado, se les asigna una puntuación. A base del resultado que se obtenga es que el Departamento de Corrección y Rehabilitación recomienda un nivel de custodia que puede variar entre máxima, mediana, mínima o mínima comunitaria. Si el resultado obtenido resultara ser menor de cinco, y no existiese órdenes de arresto o detención contra el confinado, la escala recomienda un nivel de custodia menor. **No obstante, la escala también provee varios renglones de modificaciones discrecionales, para aumentar o disminuir el nivel de custodia**. Las modificaciones discrecionales son un conjunto de factores específicos de clasificación que el personal puede usar para modificar la puntuación de clasificación de un confinado, pero solamente con la aprobación del supervisor de clasificación. Toda modificación de este tipo debe estar basada en documentación escrita, proveniente de reportes disciplinarios, informes de querellas, informes del libro de novedades, documentos del expediente criminal y/o social y cualquier otra información o documento que evidencie ajustes o comportamiento del confinado contrario a las normas y seguridad institucional. Entre estas modificaciones se encuentran: la gravedad del delito, el historial de violencia excesiva, la afiliación prominente con gangas, riesgo de fuga o evasión, entre otras. Apéndice K, Secs. III(D) y (F) del Reglamento Núm. 9151. (Énfasis nuestro).

Ahora bien, y en lo concerniente al asunto que hoy atendemos, el Tribunal Supremo de Puerto Rico apuntó en *Lebrón Laureano v. Depto. de Corrección*, 209 DPR 489, 504 (2022) que el Comité y los profesionales que lo integran tienen amplia discreción para evaluar el progreso del confinado en aras de determinar el nivel de custodia aplicable. Además, rechazó que la agencia descanse en un solo factor en la determinación de la clasificación de custodia de un confinado. Su decisión se debe conducir de acuerdo con lo dispuesto en reglamento correspondiente para la evaluación del confinado a través de la Escala de Reclasificación. *Íd.*, págs. 512-513.

**III.**

En esencia, el recurrente expresa no estar de acuerdo con la determinación del Comité de ratificar su nivel de custodia máxima, utilizando la **modificación discrecional** de gravedad del delito que provee la *Escala de Reclasificación de Custodia.* Específicamente, aduce que no le aplican modificaciones no discrecionales. Añade que la agencia violentó sus propias reglas de reclasificación y lo sometieron a permanecer por tiempo indeterminado en el mismo nivel de custodia máxima. Alega que la agencia quebrantó el mandato constitucional del derecho a la rehabilitación al otorgarle mayor peso e importancia al tiempo que le resta por cumplir para ser considerado por la Junta de Libertad Bajo Palabra que a los signos de rehabilitación y excelente conducta demostrada en la cárcel, para evaluar si se le reduce su nivel de custodia.

A su vez, el recurrente expone que no es razonable ratificar el nivel de custodia máxima cuando al momento de la evaluación no poseía casos pendientes, querellas disciplinarias o informes negativos. Es su contención que la agencia se equivocó al alegadamente darle más peso a lo extenso de su sentencia, en exclusión de todos los factores importantes que debían tomarse en

consideración. Entiende que merece ser reclasificado a un nivel de custodia mínima.

Un análisis del expediente y la norma de derecho antes esbozada nos lleva a concluir que la decisión impugnada fue razonable. Las consideraciones realizadas por el DCR sobre los pormenores del caso del recurrente fueron prudentes y sostienen la decisión final. No existe motivo para intervenir con el criterio del foro recurrido.

En su evaluación del 28 de enero de 2026, el recurrente, quien lleva confinado poco menos de dos años, obtuvo una puntuación total de custodia de dos (2) en los renglones 1-8 de la Parte II de la *Escala de Reclasificación de Custodia*. Según la norma general, y como resultado de dicha puntuación total, correspondía ser asignado a un nivel de custodia mínima. De este documento se desprende que el Comité **no aplicó** ninguna consideración especial, **ni ninguna modificación no discrecional al caso del recurrente** (confinados con sentencias de 99 años o más; orden de deportación; o más de 15 años antes de la fecha máxima).

Sin embargo, en el análisis subjetivo y conforme provee el Reglamento Núm. 9151, el Comité **realizó una modificación discrecional relacionada a la gravedad del delito** para recomendar un nivel de custodia más alto al que sugería la puntuación obtenida. Ello, al considerar los delitos por los cuales el recurrente cumple la sentencia actual, que demostraron menosprecio a la vida humana. Del expediente surge que el foro administrativo cumplió con la Sec. III(D) de Reglamento Núm. 9151, la cual obliga al personal correspondiente documentar y explicar las características de los delitos que aparecen con declaración de los hechos que se están utilizando como fundamento para la aplicación de la modificación discrecional.

Cabe resaltar que la agencia administrativa no descansó en un solo factor al momento de tomar su decisión, pues consideró todos los enumerados en el Reglamento Núm. 9151. Particularmente, analizó que el recurrente no requiere servicios en el área de los trastornos adictivos y tuvo la oportunidad de rendir labores de ordenanza en el D2, de donde no surgían aspectos negativos. Además, se consideró que el recurrente fue referido para las terapias de regulación del coraje y control de impulsos, así como para el tratamiento de Aprendiendo a Vivir sin Violencia, pero al momento de la evaluación no se había beneficiado de ninguna.

Por último, la agencia puntualizó que, considerando que el proceso de rehabilitación es gradual y complejo, y con la finalidad de garantizar los objetivos de su rehabilitación y la seguridad pública, era necesario que el recurrente continúe observando ajustes institucionales bajo máximas restricciones físicas. Así las cosas, concluyó que, al momento, el recurrente no es acreedor de un cambio de nivel de custodia, a pesar de que la puntuación sugiere dicha reclasificación.

Por ello, es forzoso concluir que la actuación de la agencia de ratificar la custodia máxima del recurrente constituye una decisión razonable. Somos del criterio que la aludida decisión cumple con el objetivo de garantizar la protección de la sociedad, al tiempo que mantiene controlada la seguridad en las diversas instituciones carcelarias.

En virtud de lo antes expuesto, y tras revisar las conclusiones de derecho de la decisión administrativa en todos sus aspectos, concluimos que el recurrente no logró derrotar la presunción de corrección que esta ostenta, ni tampoco nos persuadió a alejarnos de la norma de deferencia que esta merece. En consecuencia, confirmamos la *Resolución de Hecho y Derecho* impugnada.

### IV.

Por los fundamentos antes expuestos, confirmamos la *Resolución de Hecho y Derecho* emitida por el Comité de Clasificación y Tratamiento.

Lo acordó este Tribunal y lo certifica la Secretaría del Tribunal.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones